IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RITA M. LINDSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No: 7:12CV00508 |
| v. | ) |
| | ) |
| ALLIANT TECH SYSTEMS, INC., | ) |
| | ) CLERK'S OFFICE U.S. DIST. COURT |
| and | ) AT ROANOKE, VA |
| | ) FILED |
| ALLIANT TECHSYSTEMS OPERATIONS, | ) |
| LLC, | ) OCT 2 3 2012 |
| | ) |
| Serve: | ) JULIA C. DUDLEY, CLERK |
| CT Corporation System | ) BY: /s/ |
| 4701 Cox Road, Suite 301 | ) DEPUTY CLERK |
| Glen Allen, Virginia 23060-6802 | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

The above-named Plaintiff, Rita M. Lindsey, by counsel, states as her Complaint against the Defendants, Alliant Tech Systems, Inc. and Alliant Techsystems Operations, LLC (hereinafter, "ATK"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, as codified under Title

29 U.S.C. §§621 *et seq.* ("ADEA"). *See* 42 U.S.C. §2000e-5(f); 29 U.S.C. §626(c)(1); and 28 U.S.C. §1343(a).

2. Due to its contacts within the Commonwealth of Virginia, ATK avails itself to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of ATK from which the cause of action arises, occurred within the Western District of Virginia. *See* 28 U.S.C. §1391(b)(2).

3. Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission; received a Dismissal and Notice of Rights dated July 26, 2012, a copy of which is attached to this Complaint as **Exhibit A**; and files this action within 90 days of receipt of that notice.

## II. FACTUAL BACKGROUND

4. Ms. Lindsey is a female and resident of the County of Pulaski, Virginia. Ms. Lindsey was approximately fifty (50) years of age at the time of her termination from employment with ATK on April 18, 2011.

5. ATK is a corporation duly, organized and existing under the laws of the Commonwealth of Virginia, that develops and manufactures materials and products for defense, aerospace, security, and sporting customers.

6. More specifically to this matter, at all times relevant to the Complaint ATK was authorized to and previously did operate the Radford Army Ammunition Plant, in Radford, Virginia.[1] The primary mission of the Radford Army Ammunition Plant is

---

[1] The operation of the Radford Army Ammunition Plant transitioned to BAE Systems in 2012.

to manufacture propellants and explosives in support of field artillery, air defense, tank, missile, aircraft and other weapons systems.

7. Ms. Lindsey was initially employed by ATK in 1992. Ms. Lindsey received numerous pay raises and promotions over twenty (20) years of employment with ATK. At the time of her termination from employment in April of 2011, Ms. Lindsey was employed by ATK as a Ballistics Technician, Classification A ("BTCA").[2]

8. Ms. Lindsey's compensation included wages of $23.28 per hour, overtime wages which she regularly received, four (4) weeks of paid vacation, full health benefits, the opportunity to participate in a company sponsored 401(k) retirement plan, and a company contribution to a pension plan.

9. Ms. Lindsey performed her duties faithfully, diligently, and with competence during the entire length of her employment with ATK.

10. Ms. Lindsey never received any disciplinary actions while employed with ATK.

### A. ATK Hires Neil Miller

11. While Ms. Lindsey had always enjoyed her work and her coworkers throughout her employment with ATK, her working environment changed drastically and negatively in July of 2009 when ATK hired Mr. Neil Miller as a Supervisor in the Radford Arsenal Ballistics Department. As of that date, Mr. Miller was Ms. Lindsey's direct supervisors.

12. Mr. Miller was significantly younger than Ms. Lindsey and immediately took every

---

[2] The BTCA classification is the highest level achievable in Ms. Lindsey's former position and takes many years of training to achieve.

3

opportunity to belittle and ostracize Ms. Lindsey due solely to her sex and/or age.

13. Indeed, on Mr. Miller's very first day of employment as the Ballistics Department Supervisor and during the very first interaction between himself and Ms. Lindsey, Mr. Miller verbally attacked Ms. Lindsey. Specifically, Mr. Miller exploded in anger when Ms. Lindsey directed a question to the Area Manager, Mr. Russ Miller, instead of Mr. Miller. Mr. R. Miller was Mr. Miller's immediate predecessor.

14. Mr. Miller aggressively approached Ms. Lindsey and loudly and angrily screamed, "I am running this department and I am the supervisor!! Do not be asking questions to Russ Miller!!" Ms. Lindsey recalls that during this encounter Mr. Miller was uncomfortably close to her, was shaking violently, the veins in his face and neck were pulsing, and his hands were gesturing wildly.

15. When Mr. R. Miller was advised of the incident, he forced Mr. Miller to apologize to Ms. Lindsey. However, Mr. Miller's abusive behavior towards Ms. Lindsey was just beginning.

16. Mr. Miller often spoke to Ms. Lindsey in this type of aggressive and disrespectful manner. She never observed him to address other employees in this way. Upon information and belief, Mr. Miller attempted to intimidate Ms. Lindsey with this type of behavior due solely to her sex and/or age.

### B. Sexual/Age Related Discussions/Jokes in the Workplace

17. Mr. Miller created an environment of hostility and often subjected Ms. Lindsey to

4

sexually-based and age-related stories/jokes in the work place.[3]

18. Supervisor Mr. Miller consistently encouraged sexualized jokes and banter in the workplace. Not only was Ms. Lindsey subjected to these inappropriate stories/jokes, she was also penalized and ostracized for not willingly participating in this inappropriate departmental culture.

19. On one occasion, while Ms. Lindsey was taking a scheduled break in the company break room, Mr. Miller forced Ms. Lindsey to listen to a distasteful story he was telling to several male employees about marital infidelity. While her male co-workers laughed at the story, Ms. Lindsey was offended and exited the break room without responding.

20. As another example, one of Ms. Lindsey's co-workers was commonly referred to as "Dick," which was a nickname for his first name, "Richard." On numerous occasions, Ms. Lindsey was subjected to Mr. Miller creating an inappropriate double entendre with this innocuous employee's name by asking another female employee if she wanted to "go play with *Dick*."

21. As another example, when another employee made a joke about bringing a sex toy to work, Mr. Miller laughed even though, as a supervisor, Mr. Miller should have known that these types of discussions/jokes are not appropriate work-place conversation and should have discouraged that type of behavior.

22. On another occasion, a male employee discovered an empty gun shell box filled with

---

[3] It should be noted that Ms. Lindsey, as a female, was a minority at her work location. Indeed, at the time of Ms. Lindsey's termination, there was only one other female employee at her work location and the other female employee was significantly younger than Ms. Lindsey.

menstruation pads/incontinence items/female underwear near a former female employee's work station. The male employee turned over the box of items to Mr. Miller who promptly shared and joked about the items with a group of all male employees. Mr. Miller then instructed Ms. Lindsey to approach the group where he presented her with the box of feminine products and asked her what they were and why they were there. Ms. Lindsey was extremely embarrassed and shocked.

23. Several male employees in the group made references to the feminine products and this former female employee's older age and joked, "she is so old when she coughs she probably wets herself!" These comments and Mr. Lindsey's uncomfortable reaction caused the group to find even more humor in the situation. Indeed, the male employees, including Mr. Miller laughed raucously directly at Ms. Lindsey until she exited the situation.

24. Upon information and belief, Mr. Miller displayed and questioned Ms. Lindsey about this box of feminine products in an attempt to embarrass Ms. Lindsey.[4]

25. On one occasion, Ms. Lindsey was subjected to co-workers discussing "sexting" and discussing the size of their children's penises.

26. Ms. Lindsey observed Mr. Miller to enjoy these above-referenced types of discussions/jokes and to be friendly towards those employees who engaged in this type of banter with him, almost all of whom were younger male employees. Indeed,

---

[4] Incidentally, this former female employee had a personal need for these items but ATK did not provide separate locker rooms for female employees. Accordingly, in an attempt to keep her feminine products private, this employee was forced to store them in a camouflaged container near her workstation for easy access and privacy.

6

Mr. Miller favored these employees by covering up their mistakes, providing them with fast-tracked promotions, and submitting them to very little oversight.

27. Because of Ms. Lindsey's age and/or sex and/or because of her refusal to participate engage in these inappropriate discussions/jokes, Ms. Lindsey was alienated and treated poorly by Mr. Miller.

### C. Disparaging Comments

28. Mr. Miller consistently made disparaging comments about Ms. Lindsey to other employees in an attempt to intimidate and ostracize her because of her age/sex.

29. As an example, Ms. Lindsey consistently worked many overtime hours per week and often consequently worked on the weekends. Mr. Miller would consistently advise department engineers and other technicians when they would make an inquiry about various tests/projects, "We didn't get that done this weekend. All we had this weekend was *Rita*." These comments were unwarranted and offensive to Ms. Lindsey as she worked hard and was very good at her job as evinced by her long tenure and A classification as a ballistics technician.

30. Mr. Miller also often singled out Ms. Lindsey and make negative comments to other employees in regards to her work product and work ethic. Upon information and belief, Mr. Miller made these false statements in an effort to undermine Ms. Lindsey's position and reputation in the workplace.

31. On one occasion, Ms. Lindsey and another co-worker were tasked with shooting/testing a certain amount of ammunition rounds. Ms. Lindsey and this co-

worker were so productive that Mr. R. Miller instructed Mr. Miller to provide them with incentive awards for their excellent work. Mr. Miller later took this opportunity to belittle Ms. Lindsey in front of a group of employees and sarcastically commented upon her work product thereby suggesting that her work product was poor rather than good. Mr. Miller did not make the same sarcastic comments about Ms. Lindsey's male co-worker. Ms. Lindsey was never provided with her award.

32. Mr. Miller also prevented Ms. Lindsey, and only Ms. Lindsey, from taking or completing her scheduled break times. Mr. Miller would often enter the break room and ask Ms. Lindsey why she was on break when he was well aware that she was entitled to this break time. He would ask her, "what are you doing?!," and instruct her to "get back to work." Mr. Miller would not make these comments to other employees who were similarly taking their breaks. Indeed, he would often remain in the break room and socialize with the employees once Ms. Lindsey had departed.

### D. Mr. Miller's Attempts to Sabotage/Discipline Ms. Lindsey

33. Mr. Miller attempted to unfairly discipline Ms. Lindsey on numerous occasions.

34. On one occasion, Mr. Miller attempted to undeservedly discipline Ms. Lindsey for utilizing <u>red</u> ammunition shells as opposed to <u>gray</u> ammunition shells during a test of commercial sporting gun powder.

35. Mr. Miller called a group department meeting and informed the group that Ms. Lindsey had made a huge error. He screamed at Ms. Lindsey that he was going to "write her up" for her use of the "wrong color" shells.

36. Ms. Lindsey defended her actions and explained that the shells were identical other than color and that the validity of the test had not been compromised in any way. Several engineers confirmed Ms. Lindsey's choice of the shells for the test so Mr. Miller was forced to abandon his attempt to discipline Ms. Lindsey.

37. On another occasion, Mr. Miller purposefully failed to give Ms. Lindsey a critical instruction during certain ammunition tests. Not surprisingly, the test was not completed to the specifications of the project engineer resulting in significant damage to the project. Ms. Lindsey was not disciplined, however, as Mr. Miller ultimately admitted that he had forgotten to advise Ms. Lindsey to use the appropriate "wave setting" on the test.

38. On another occasion, Ms. Lindsey was tasked with manufacturing 12 gauge shells. In the middle of the process, Ms. Lindsey left her work station to procure more "wad" to complete the shells. Upon her return, it was discovered that someone had dropped a 9 millimeter case in one of the shells. This case could have potentially caused the shell to ignite and injure another employee at a later point in the manufacturing process. At the very least, it would have illustrated poor work product on the part of Ms. Lindsey.

39. There were no cases of that size/description near Ms. Lindsey's workspace and Ms. Lindsey is certain that the case was not there when she left her work station. Mr. Miller completed a brief "investigation" himself and determined that this incident was an accident.

### E. Ms. Lindsey's Complaints & Resulting Retaliation

40. In September of 2009, Ms. Lindsey complained to Area Manager Russ Miller about Mr. Miller's partiality towards the younger workers. Mr. Russ Miller did not address Ms. Lindsey's complaint. Many of the inappropriate comments and actions on the part of Mr. Miller mentioned above ensued after Ms. Lindsey's complaint.

41. In February of 2010, Ms. Lindsey complained to Ms. Denise Hughes, the ATK Director of Human Resources, about the "intimidation of women" in the work place. Ms. Lindsey complained about the intimidation tactics she and another older female were forced to endure at the hands of Mr. Miller and specifically requested "help" from Ms. Hughes. Ms. Hughes failed to complete any sort of investigation regarding Ms. Lindsey's complaints.

42. In addition, taking cues from Supervisor Mr. Miller, several of Ms. Lindsey's younger male co-workers made disparaging comments to her.

43. One employee, Chris Back, who is male and considerably younger than Ms. Lindsey, in the context of a discussion about job security, stated to Ms. Lindsey, "At your age you don't need the money."; "You are as lazy as my wife."; "As long as you have been here, you should know more." Mr. Back also advised his male co-workers within Ms. Lindsey's hearing that, "The women talk too much."; "They [the women] can't do the work without me [Chris Back]."

44. Ms. Lindsey complained to Mr. Miller about Mr. Back's offensive and inappropriate comments in November of 2010. Mr. Back was not disciplined.

45. Another employee, Eric Woodrum, who is male and considerably younger than Ms. Lindsey, falsely accused Ms. Lindsey of not completing her work in a timely manner. In January of 2011, when Ms. Lindsey learned of Mr. Woodrum's accusation, she confronted him in a professional manner and asked why he falsely accused her. Mr. Woodrum, who is 6'3" and has a reputation for emotional outbursts in the work place, screamed and cursed at Ms. Lindsey and physically rushed at her in an intimidating fashion effectively pushing her aside in a hallway.

46. Ms. Lindsey immediately complained about Mr. Woodrum's behavior to Andrew Sanderson, Director of the Technical Department, Chuck Snedecker, a Human Resources Representative, and Mr. Miller. No investigation was completed. Accordingly, Ms. Lindsey complained again to Mr. Snedecker and advised him that she was afraid of Mr. Woodrum. Again, no investigation was completed.

47. Upon information and belief, Mr. Back and Mr. Woodrum were advised of Ms. Lindsey's complaints. Accordingly, Mr. Back and Mr. Woodrum attempted to sabotage Ms. Lindsey's work product by making copies of her ballistics test results and falsely suggesting to Mr. Miller that the tests were not completed properly. On every occasion, Ms. Lindsey was able to support her work product as being accurate and proper.

48. In January 2011, Ms. Lindsey made complaints about Mr. Miller to her Union Representative. The next day, Mr. Miller punished Ms. Lindsey by forcing her to move boxes for eight (8) hours outside in the extreme cold.

49. Upon information and belief, in February of 2011, Mr. Back and Mr. Woodrum contacted the ATK corporate offices and made false and malicious complaints about Ms. Lindsey. Upon information and belief, the reasons for these complaints were due to Ms. Lindsey's age/sex and/or in retaliation for Ms. Lindsey's complaints in regards to these individuals.

50. On February 23, 2011, Ms. Lindsey was placed on suspension while an "investigation" was completed in regards to the complaints. Ms. Lindsey was suspended for fifty (55) days and at no time was she given the opportunity to participate in this purported "investigation." Neither Mr. Miller nor Ms. Lindsey's younger male co-workers were suspended despite the fact that she had complained about them on numerous occasions.

51. Ultimately, ATK requested that Ms. Lindsey sign a corrective action, which she refused because it was inaccurate and unwarranted. She was also offered the choice between a demotion and reduction in pay or termination from employment. Ms. Lindsey refused to accept a demotion and was subsequently terminated on April 18, 2011.

52. Upon information and belief, Ms. Lindsey was replaced by a younger male employee, Eric Woodrum.

## COUNT I: CLAIM FOR SEX DISCRIMINATION

53. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.
54. Ms. Lindsey is a female and protected from sex discrimination by Title VII.

12

55. ATK would not have terminated Ms. Lindsey or taken the other discriminatory actions against Ms. Lindsey but for Ms. Lindsey's sex.

56. At all times material hereto, ATK had an obligation to maintain a work environment that was not charged with sexual discrimination and hostile to Ms. Lindsey and other females.

57. ATK violated federal law by permitting a work environment to exist that was sexually charged and discriminatory to Ms. Lindsey and other women, and by wrongfully terminating Ms. Lindsey.

58. Because Mr. Miller's and others actions were taken within the scope of their employment, ATK is responsible for their actions based upon the doctrine of *respondeat superior.*

59. As a direct and proximate result of ATK's actions, Ms. Lindsey has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

60. At all times material hereto, ATK engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Lindsey so as to support an award of liquidated and/or punitive damages.

61. The above-described acts by ATK and employees of ATK constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT II: CLAIM FOR HOSTILE WORK ENVIRONMENT

62. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

63. Ms. Lindsey is a female and protected from a hostile work environment by Title VII.

64. Ms. Lindsey was subject to unwelcome sexual innuendos and remarks based upon her sex that altered the conditions of her employment and created an abusive work environment.

65. At all times material hereto, ATK had an obligation to maintain a work environment that was not charged with sexual harassment and hostile to Ms. Lindsey and other females.

66. ATK violated federal law by permitting a work environment to exist that was sexually charged and hostile and offensive to Ms. Lindsey and other females, and by wrongfully terminating Ms. Lindsey.

67. Because Mr. Miller's and others actions were taken within the scope of their employment, ATK is responsible for their actions based upon the doctrine of *respondeat superior*.

68. As a direct and proximate result of ATK's actions, Ms. Lindsey has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

69. At all times material hereto, ATK engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Lindsey so as to support an award of liquidated and/or punitive damages.

14

70. The above-described acts by ATK and employees of ATK constitute a claim for a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT III: CLAIM FOR AGE DISCRIMINATION

71. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

72. At the time of her termination from employment from ATK, Ms. Lindsey was fifty (50) years of age, and protected from age discrimination by the ADEA.

73. ATK would not have terminated Ms. Lindsey or taken the other discriminatory actions against Ms. Lindsey but for Ms. Lindsey's age.

74. Because Mr. Miller's and others actions were taken within the scope of their employment, ATK is responsible for their actions based upon the doctrine of *respondeat superior.*

75. Prior to Ms. Lindsey's termination, Ms. Lindsey was performing her work at a satisfactory level and meeting or exceeding ATK's legitimate business expectations.

76. Upon information and belief, after Ms. Lindsey's termination, her job duties were taken over by a significantly younger individual, Eric Woodrum, who is well outside of the protected class as defined by the ADEA.

77. The reasons given for Ms. Lindsey's termination from employment were pretextual as Ms. Lindsey's work performance was excellent.

78. As a direct and proximate result of ATK's actions, Ms. Lindsey has suffered and will

15

continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

79. At all times material hereto, ATK engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Lindsey so as to support an award of liquidated or punitive damages.

80. The above-described acts by ATK and employees of ATK constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under Title 29 of the United States Code §§621 *et. seq.*

81. Ms. Lindsey is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to Title 29 of the United States Code §626(b).

### COUNT IV:  CLAIM FOR RETALIATON

82. Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

83. Ms. Lindsey is protected from retaliation by Title VII and the ADEA.

84. ATK would not have terminated Ms. Lindsey or taken the other discriminatory actions against Ms. Lindsey but for Ms. Lindsey's sex and/or age.

85. ATK violated federal law by permitting a work environment to exist that was hostile and offensive to Ms. Lindsey and others.

86. Ms. Lindsey made complaints about this work environment and was subsequently targeted and ultimately wrongfully terminated.

87. Because Mr. Miller's and others actions were taken within the scope of their employment, ATK is responsible for their actions based upon the doctrine of

*respondeat superior.*

88. ATK violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of a hostile work environment and discrimination for complaining of the same.

89. As a direct and proximate result of ATK's actions, Ms. Lindsey has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

90. At all times material hereto, ATK engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Lindsey so as to support an award of liquidated and/or punitive damages.

91. The above-described acts by ATK and employees of ATK constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.* and the Age Discrimination in Employment Act, as codified under Title 29 of the United States Code §§621 *et. seq.*

WHEREFORE, Plaintiff Rita M. Lindsey prays for judgment against Defendants Alliant Tech Systems, Inc. and Alliant Techsystems Operations, LLC, and for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

_____
Thomas E. Strelka, VA Bar No. 75488
Strickland, Diviney & Strelka
23 Franklin Road
P.O. Box 2866
Roanoke, Virginia 24001
Phone: (540) 982-7787
Fax: (540) 342-2909
thomas@strelkalaw.com

*Counsel for Plaintiff*